# Illinois Official Reports

## Appellate Court

---

### *People v. Kennebrew*, 2014 IL App (2d) 121169

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD KENNEBREW, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1169 |
| Filed | June 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The first-stage dismissal of defendant's *pro se* postconviction petition as frivolous and patently without merit was upheld on appeal, notwithstanding his contention that his appellate counsel was ineffective in failing to argue that the confrontation clause was violated by the trial court's admission of a videotaped interview of the victim of defendant's alleged sexual assault and abuse when the victim testified that she did not remember making any statements implicating defendant, since the victim was present at the trial and was available and willing to answer questions and her inability to remember or recall events did not render her unavailable for purposes of the confrontation clause; therefore, appellate counsel's failure to raise the confrontation clause issue on direct appeal was not objectively unreasonable and did not prejudice defendant. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 08-CF-3355; the Hon. Joseph G. McGraw, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas A. Lilien and Jessica Wynne Arizo, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justice Hutchinson concurred in the judgment and opinion.<br>Justice Schostok specially concurred, with opinion. |

## OPINION

¶ 1        Defendant, Reginald Kennebrew, appeals from the first-stage dismissal of his petition for postconviction relief. In 2009, he was found guilty of two counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse, although one of the counts of predatory criminal sexual assault was later reduced to aggravated criminal sexual abuse, which is a lesser included offense of predatory criminal sexual assault. *People v. Kennebrew*, 2013 IL 113998, ¶ 25. He filed a *pro se* postconviction petition, arguing in part that his appellate counsel was ineffective. The trial court dismissed his petition, finding it to be frivolous and patently without merit for failing to raise the gist of a constitutional claim. For the reasons set forth herein, we affirm.

¶ 2                                          I. BACKGROUND

¶ 3        The State filed a three-count indictment against defendant on August 27, 2008, charging him with three felony counts. Count I was for predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) for penis-to-anus contact; count II was for predatory criminal sexual assault of a child for hand-to-vagina contact; and count III was for aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2008)) for touching the victim's buttocks with his hand for purposes of sexual gratification or arousal. All three counts were for alleged conduct committed against the complainant, D.C., a girl under the age of 13 when the alleged offenses took place. The jury found him guilty on all three counts.

¶ 4        The following proceedings in the trial court are relevant to defendant's postconviction petition. The State moved before trial to admit prior statements that D.C. made concerning the sexual acts that defendant allegedly performed upon her: statements to her stepmother, Cierra; statements to her cousin, Aaliyah; and statements during a videotaped interview at Carrie Lynn Children's Center (Children's Center). The trial court held that the prior statements were admissible, on the condition that D.C. would testify to the material subject matter of the statements at trial.

¶ 5     At trial, D.C. testified that she had just turned nine years old. When the State asked whether "anybody ever touched [her] on any part of [her] body that no one should touch," she responded "no." She also responded negatively when asked if she ever told anyone that someone had touched her where nobody should be touched. The State asked D.C. whether she remembered going to the Children's Center about one year earlier, and she said yes. She remembered talking to a lady there, but she said that she did not remember whether she told the lady that someone touched her body inappropriately. When asked more specific questions about her visit to the Children's Center, she recalled more facts. She remembered being taken into a room and asked questions by a lady there. Although she generally did not remember what they talked about, she remembered that the lady asked what parts of her body no one should touch. She remembered using a picture of a girl to identify the parts of a girl's body by circling them, and she likewise remembered using a picture of a boy for the same purpose. She remembered the lady asking her if anyone touched her in the places she identified, but she did not remember how she responded.

¶ 6     D.C. testified that she did tell Aaliyah that someone touched her someplace that no one should touch, although she remembered few details of what she told her. She did not remember telling her that her stepdad touched her between her legs with his "privacy." She did not remember Aaliyah asking her if it hurt and telling Aaliyah "sometimes."

¶ 7     D.C. further testified that defendant, who was her mother's long-term, live-in boyfriend, would apply lotion to her after she took a shower. She said that he would put lotion on her "everywhere," later specifying that everywhere included her stomach, legs, butt, and outside her "private." However, after D.C. failed to remember what she said about defendant on various other occasions, despite recalling many facts around those occasions, the court granted the State's motion to treat D.C. as a hostile witness. The court noted that D.C. would put her head down, take long pauses before answering questions, and answer questions reluctantly. When the State proceeded to examine D.C. as a hostile witness, with leading questions, she mostly answered "no" when asked if she remembered telling anyone about the alleged acts of sexual misconduct. She did, however, recall that she told Cierra that one time defendant rubbed his "thing" across her bottom while she was on her stomach. When asked again about talking to the lady at the Children's Center, she remembered going but did not remember anything she told the lady about defendant touching her inappropriately. After the State finished questioning D.C., the defense declined to cross-examine her.

¶ 8     The State played for the jury a videotaped interview between Marisol Tischman and D.C. at the Children's Center on January 16, 2008. D.C. and Tischman talked about the following at the interview. D.C. told Tischman that, on more than one occasion, defendant put his thumbs inside her "loosey"–her word for her vagina–and that he rubbed her buttocks and put his "thing," *i.e.*, penis, inside her butt. Although she never saw his "thing," she described it as "wet and mushy." She could not recall how many times he put his "thing" in her butt, but it happened many times. Defendant would do this on the bed in D.C.'s mother's bedroom. Her mother was not usually home when this occurred, because she worked nights. Defendant would apply lotion to D.C. after she showered, having her lie naked on her back and stomach on the bed. He put his thumb inside her "loosey" when she was on her back, and he put his "thing" inside her butt when she would lie on her stomach. He would just "stick it in there," and it felt "not good." D.C. said that he wore a T-shirt and underwear and that he would kneel by the bed. He would take his "thing" out of his underwear, although she never saw it.

- 3 -

D.C.'s younger sister, Heaven, was often playing on the bed when this happened. D.C. was seven years old and in second grade when defendant would touch her in these ways. Defendant did not touch her after she turned eight on December 20, 2007, and he no longer lived with her at her mother's house at the time of the interview. D.C. said that she told two people that defendant had touched her in places where she should not be touched: Cierra and Aaliyah.

¶ 9 Aaliyah, 13 years old at the time of trial, testified as follows. She last saw D.C. around Christmas 2007. Once when D.C. stayed overnight, she asked Aaliyah whether Aaliyah's dad touched her. Aaliyah said no, and D.C. responded that defendant touched her. Aaliyah asked how, and D.C. said that he used his "private part" to touch her "down there," in "her privacy." She said that it sometimes hurt. The next day Aaliyah told one of her sisters what D.C. told her.

¶ 10 Cierra testified to the following. She was married to D.C.'s biological father, Marlowe. During Christmas break in 2007, extending to 2008, D.C. came to spend time with her and Marlowe in Aurora, Illinois. During D.C.'s visit, she spent the night at Cierra's sister Tasha's house. Shortly after D.C. went back home, Aaliyah, who was Tasha's daughter, told Cierra what D.C. had told her. Upon hearing what D.C. had told Aaliyah, Cierra called Marlowe, and he came home from work immediately. She and Marlowe decided to drive to see D.C. in Rockford to confirm whether what D.C. had told Aaliyah was true. They arranged to take D.C. and her siblings to Pizza Hut. At Pizza Hut, Cierra took D.C. to a separate table to ask whether anyone had ever touched her inappropriately. D.C. initially said no; but after some more talking, she said that she had told Aaliyah that defendant had touched her in inappropriate places. To demonstrate where defendant had touched her, she "touch[ed] her vagina area," and she told Cierra that he would rub his penis up and down her bottom.

¶ 11 Lori Thompson, a pediatric nurse practitioner who volunteered at the Children's Center, performed a physical examination of D.C. and testified to the following. Her examination revealed a cleft in the hymenal tissue and redness just outside the hymenal area, which were findings consistent with sexual abuse.

¶ 12 Defendant testified on his own behalf, denying that he put his fingers in D.C.'s vagina or his penis in her anus. He did admit to rubbing lotion on her butt, but he denied that he did so for sexual gratification; he did it because she complained of dry and itchy skin.

¶ 13 During deliberations, the jury sent a note to the court, asking, "We, the jury, would like to view the video," in reference to the taped interview between Tischman and D.C. Defendant objected, arguing that the jury had already seen the video and that sending the video to the jury room was tantamount to sending D.C. and Tischman to the jury deliberations. The court overruled the objection, understanding defendant's position but likening the video to a transcript and believing that it would assist the jurors in their deliberations.

¶ 14 The jury returned a verdict of guilty on all three counts. The court sentenced defendant to consecutive terms of 15, 15, and 5 years.[1] A direct appeal followed, in which defendant raised the following issues: (1) whether his conviction on count I (predatory criminal sexual assault) should be reversed because the State failed to prove his guilt beyond a reasonable doubt, and (2) whether section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2010)) was unconstitutional because it violated the confrontation

_____

[1]The court ordered that defendant serve 85% of each 15-year term.

- 4 -

clause. We reversed the conviction on count I, finding insufficient evidence of penile penetration as required for the conviction of predatory criminal sexual assault. *People v. Kennebrew*, No. 2-09-0754 (2009) (unpublished order under Supreme Court Rule 23). The State filed a petition for leave to appeal to the supreme court, asking it to consider whether the evidence found insufficient to prove predatory criminal sexual assault was yet sufficient to prove aggravated criminal sexual abuse. See *People v. Kennebrew*, No. 112472 (Ill. Sept. 28, 2011). Although the supreme court denied leave to appeal, in an exercise of its supervisory authority it directed this court to consider whether the evidence was sufficient to prove aggravated criminal sexual abuse. *Id.* On remand, we held that aggravated criminal sexual abuse was a lesser included offense of predatory criminal sexual assault. *People v. Kennebrew*, 2012 IL App (2d) 090754-U, ¶ 51. We found the evidence sufficient to support a conviction of the lesser included offense, and we remanded for sentencing on that offense. *Id.* ¶¶ 54-57. The supreme court affirmed our order. *Kennebrew*, 2013 IL 113998. Defendant's resentencing is currently pending.

¶ 15　　Defendant filed his postconviction petition on June 26, 2012, and the trial court dismissed the petition on September 19, 2012, as frivolous and patently without merit. We allowed leave to file a late notice of appeal on January 16, 2013.

¶ 16　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　This appeal asks us to review the dismissal of defendant's postconviction petition at the first stage as frivolous and patently without merit. Our review, therefore, is *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010); *People v. Edwards*, 197 Ill. 2d 239, 247 (2001).

¶ 18　　The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) provides a three-stage process for resolving claims of constitutional violations. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage, the trial court must review the petition, taking the allegations as true, and determine whether it "is frivolous or is patently without merit," dismissing the petition if it is. 725 ILCS 5/122-2.1(a)(2) (West 2012); see *Hodges*, 234 Ill. 2d at 10. A petition is frivolous or patently without merit when the allegations, taken as true and liberally construed, fail to present the " 'gist of a constitutional claim.' " *Edwards*, 197 Ill. 2d at 244 (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). Presenting a "gist" of a constitutional claim is a low threshold, and only limited detail is necessary for the petition to pass muster; a *pro se* defendant need not plead all "sufficient facts" or legal bases for his claim. *Id.* However, the "gist" of a constitutional claim is merely what the defendant must describe at the first stage; it is not the legal standard used to evaluate the petition. *Hodges*, 234 Ill. 2d at 11. Whether the defendant presents the "gist" of a constitutional claim is "to be viewed within the framework of the 'frivolous or *** patently without merit' test" under section 122-2.1 of the Act. *Id.* Accordingly, the petition is to be summarily dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *Id.* at 11-12. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. An example of a meritless legal theory is one completely contradicted by the record, and a fanciful factual allegation is one that is "fantastic or delusional." *Id.* at 17.

## A. Defendant's Argument

¶ 20    Turning to defendant's argument, he contends that he did raise the gist of a constitutional claim in his postconviction petition when he asserted that his appellate counsel was ineffective on his direct appeal for not arguing that the trial court should not have admitted the videotape of the interview between D.C. and Tischman, because it violated the confrontation clause. At trial, the court asked the parties to look at whether D.C.'s testimony satisfied "the requirements of [*Crawford v. Washington*, 541 U.S. 36 (2004),] as a predicate determination," and defendant responded that D.C. was unavailable for cross-examination because she testified that she did not remember making any statements implicating defendant in the charged offenses.

¶ 21    Defendant argues that, although D.C. took the stand at trial, under *Crawford* she did not provide "testimony," because she did not remember any salient details about defendant's alleged offenses. For example, defendant asserts, although D.C. remembered talking with a woman at the Children's Center, she did not recall telling her that someone touched her where no one should; while she remembered the woman showing her pictures of girls and boys to identify parts of their bodies, she did not remember what she told the woman when asked if anyone touched her on certain parts of her body; and although she testified that defendant would rub lotion all over her, she did not remember if she told the woman whether he touched her with any part of his body other than his hands. Therefore, defendant argues, D.C.'s lack of recall on the stand as to any facts relevant to the elements of the alleged offenses showed that she was not "present" in court to "defend or explain" her out-of-court statements. *Id.* at 59 n.9.

¶ 22    Defendant relies on *People v. Learn*, 396 Ill. App. 3d 891 (2009), to support his contentions that D.C.'s mere physical presence in court to answer general questions was insufficient to satisfy section 115-10(b) of the Code (725 ILCS 5/115-10(b) (West 2010) (for the hearsay exception to apply, either the child must testify at the proceeding or the child must be unavailable to testify and the statements must be corroborated)) and that her out-of-court testimonial statements were inadmissible under the confrontation clause. He argues that in *Learn* we held that a witness's mere presence in court to answer general questions without testifying about the alleged offense was insufficient to render the witness available for cross-examination. Moreover, defendant argues that we held in *Learn* that the witness's out-of-court testimonial statements violated the confrontation clause because she did not confront the defendant in open court and accuse him of any wrongdoing–which he contends is analogous to this case because in open court D.C. did not accuse defendant of any wrongdoing. Defendant contends that he did not cross-examine D.C. because she did not answer any questions on direct about defendant's alleged misconduct and she therefore did not "defend or explain" the accusations against defendant that she made outside of court.

¶ 23    Defendant maintains that the videotape of D.C.'s interview by Tischman played a critical role in the jury's finding of guilt. The court permitted the jury to view the video, not only during trial, but also during its deliberations, where the jury could watch any portion of the tape as many times as desired. He argues that his claim that appellate counsel was ineffective for failing to argue that the tape's admission violated the confrontation clause had an arguable basis in law and fact and that thus we should reverse the dismissal of his petition and remand so that his petition may proceed to the second stage of postconviction proceedings.

¶ 25    The State responds as follows. It is well established that a witness's refusal or inability to recall the events detailed in a prior statement does not render the witness "unavailable" for purposes of the confrontation clause. See, *e.g.*, *United States v. Owens*, 484 U.S. 554, 558-60 (1988) (confrontation clause guarantees only *opportunity* for cross-examination); *People v. Flores*, 128 Ill. 2d 66, 88 (1989) ("[A] gap in the witness'[s] recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination."). With the exception of *Learn*,[2] the bulk of memory-loss cases reiterate the same point, that the confrontation clause is not necessarily violated when a witness does not recall a prior statement. In other words, the confrontation clause does not require that a child sex-offense victim recall all the details of his or her prior statement in order to be considered "available" for cross-examination. The key inquiry for determining whether a declarant was available for cross-examination is whether the declarant was present in court and willing to answer counsel's questions. *In re Brandon P.*, 2013 IL App (4th) 111022, ¶ 46. Here, D.C. was available for cross-examination because she appeared in court and answered questions asked of her; it was defendant's decision to decline to cross-examine her. See *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 63. Therefore, the application of the confrontation clause to D.C.'s prior statements was a "constitutional nonevent."

¶ 26    The State also takes exception to defendant's citation to *Crawford*, 541 U.S. at 59 n.9, to support his argument that D.C.'s recollection of her prior statements was insufficient to enable her to " 'defend or explain' *** her out-of-court statements," because she did not remember accusing defendant of any wrongdoing. The full quote is: "The [confrontation] [c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* The State asserts that, read in context, it is the declarant's *presence* at trial that is of paramount concern–not necessarily his or her ability to "defend or explain" any prior statements. The State also quotes from *Crawford*, which states, two sentences earlier, "[W]hen the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." *Id.* Because D.C. appeared at defendant's trial and willingly answered questions, the State argues, the confrontation clause required nothing more.

¶ 27    The State next addresses *Learn*. It disputes that *Learn* is good law and moreover finds it distinguishable from the case at hand. The State contends that D.C. did not manifest an unwillingness to answer questions like the witness in *Learn*; rather, she testified that she could not remember the conversations she was asked about, which did not make her unavailable as a witness.

¶ 28    As to *Learn* being bad law, the State argues that no published decision has cited *Learn* approvingly. Moreover, the State contends that *Learn* stands opposed to the weight of authority on the subject of the availability of witnesses at trial. See, *e.g.*, *Owens*, 484 U.S. at 558-60; *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985) (the confrontation clause guarantees opportunity to cross; a lapse of witness's memory does not necessarily deny that right); *People v. Sutton*, 233 Ill. 2d 89, 123 (2009) (inability of declarant to remember and therefore explain prior, out-of-court statements did not, under *Owens*, violate the confrontation clause); *People v. Redd*, 135 Ill. 2d 252, 310 (1990) ("As long as the declarant is actually testifying as

---

[2]As we explain later in this opinion, we do not characterize *Learn* as a memory-loss case.

a witness and is subject to full and effective cross-examination, then the confrontation clause is not violated by admitting the out-of-court statement of the declarant."); *Flores*, 128 Ill. 2d at 88-90 (same); *People v. Sundling*, 2012 IL App (2d) 070455-B, ¶¶ 45-67 (because declarant was present for cross-examination and answered questions asked of him, admission of prior statements did not violate confrontation clause); *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶¶ 50-70; *People v. Martin*, 408 Ill. App. 3d 891, 897 (2011) (distinguishing *Learn*; where a witness is competent to testify and answer substantive questions, even though with gaps of memory, the confrontation clause is not violated); *People v. Bryant*, 391 Ill. App. 3d 1072, 1083 (2009) (child sexual-abuse victim "appeared" at trial despite apparent unwillingness to testify on direct examination as to the alleged sexual act, because she was present for cross-examination and answered defense counsel's questions); *People v. Bueno*, 358 Ill. App. 3d 143, 153-55 (2005) (witness was available for cross-examination when he remembered giving "statements" to police, despite not recalling substance of the statements, and he answered questions on cross-examination).

¶ 29    The State concludes that, because D.C. appeared at trial and willingly answered questions, she was available as a witness for purposes of the confrontation clause. Thus, appellate counsel was not ineffective for choosing not to argue that the videotape's admission violated the confrontation clause, because no basis for this argument existed in law or fact, and therefore the dismissal of the postconviction petition should be affirmed.

¶ 30                                    C. Defendant's Reply

¶ 31    Defendant replies that he claims not that he could not cross-examine D.C. but rather that, because she did not give any accusatory testimony at trial, she was *unavailable* for cross-examination. Some accusatory testimony was necessary for her to be "available." Defendant also contends that D.C. did not willingly answer questions. Instead, as the trial court noted, she "put her head down and appeared reluctant to answer questions." Due to D.C.'s reluctance to answer questions and her inability to provide accusatory testimony, she did not meet the availability requirement of the confrontation clause. See *Fensterer*, 474 U.S. at 19 (some restrictions on the right to cross-examination so emasculate the right as to violate the confrontation clause).

¶ 32                                    D. Our Resolution

¶ 33    We agree with the State that the trial court properly dismissed defendant's postconviction petition claiming ineffective assistance of appellate counsel, because no basis in law supported the argument that the admission of D.C.'s videotaped statements violated the confrontation clause. We set forth our reasoning as follows.

¶ 34    The confrontation clause of both our state and federal constitutions guarantees a criminal defendant the right to confront his or her accusers. U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***."); Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her ***."). The confrontation clause bars the admission of a declarant's testimonial statements if: (1) the declarant is unavailable at trial, and (2) the defendant did not have a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54. The parties do not debate whether

D.C.'s statements in the videotape were testimonial, but we find that they were: the statements were not for the primary purpose of treatment, medical or otherwise, but rather were for purposes of establishing whether someone had abused her–and thus providing information for a potential, future prosecution. *In re Rolandis G.*, 232 Ill. 2d 13, 35-36 (2008) (child's statements to nurse advocate at Children's Center were testimonial because primary purpose was to gather information for potential, future prosecution); see *Michigan v. Bryant*, 562 U.S. ___, ___, 131 S. Ct. 1143, 1162 (2011) ("Objectively ascertaining the primary purpose of the interrogation by examining the statements and actions of all participants is \*\*\* the approach most consistent with our past holdings [regarding testimonial statements]."). Nor is there debate whether D.C. was previously available for cross-examination (she was not). Therefore, the only confrontation clause issue is whether D.C. was available at trial.

¶ 35 A witness's inability at trial to remember or recall events does not automatically render the witness unavailable under the confrontation clause. See *Owens*, 484 U.S. at 559 (confrontation clause guarantees only opportunity to cross-examine, not that the cross-examination is effective); *Flores*, 128 Ill. 2d at 88 ("[A] gap in the witness'[s] recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination."). It is true that the key inquiry into the availability of a witness against the defendant is whether the witness was present in court and willing to answer counsel's questions. *In re Brandon P.*, 2013 IL App (4th) 111022, ¶ 46. However, defendant's reliance on *Learn* for the proposition that "a witness's mere presence in court to answer general questions without testifying about the alleged offense" is misplaced. *Learn*, 396 Ill. App. 3d at 899. *Learn* was not a memory-loss case, as we have here. In *Learn* the child-witness did not testify on direct examination that she did not know or did not remember; instead she offered no testimony whatsoever concerning the offense. See *id.* at 897 (child would cry when asked even limited questions; the State stopped direct examination after only preliminary questions; and cross-examination revealed only that she knew that the defendant was her uncle and that she had not lied to her parents about her uncle). We find a significant difference between *Learn*, where the witness answered nothing more than preliminary questions,[3] and this case, where D.C. either did not remember or did not know the answers to some, but not all, questions posed to her about the alleged offenses. Defendants such as defendant here should not rely on *Learn* beyond the situation that *Learn* addressed: the situation where a child-witness, though physically present at trial, failed to provide any testimony regarding the alleged offenses–and, importantly, "any testimony" may include testimony to a lack of memory.

¶ 36 Moreover, the holding in *Learn* that defendant relies on was based not on a confrontation clause analysis, but rather on a section 115-10 analysis. The full quote from *Learn* that defendant relies on is as follows:

"We cannot conclude that a witness's mere presence in court to answer general questions without testifying about the alleged offense is sufficient to qualify as testimony *pursuant to section 115-10* [of the Code]. \*\*\* *While our analysis is not a*

---

[3]By answers to preliminary questions, we mean ones such as in *Learn*, where the child stated, for example, where she lived, who she lived with, who her aunt and uncle were, that her grandmother's house had a basement, etc.

*confrontation clause analysis*, the Supreme Court's definition of appearance is equally applicable here." (Emphases added.) *Id.* at 899.

¶ 37    The *Learn* court addressed whether the child-witness provided "testimony" under section 115-10(b)(2)(A) of the Code. *Id.* at 898. Section 115-10(b)(2)(A) allows, *inter alia*, the admission of a child's hearsay statements complaining of an alleged sexual offense or detailing any act that is an element of a sexual offense, on condition that the child testifies at the proceeding. 725 ILCS 5/115-10(b)(2)(A) (West 2010). The *Learn* court found that the child-witness did not testify for purposes of section 115-10(b)(2)(A), reasoning that she did not testify at all about the charge in the case and barely acknowledged the people and places about which she was questioned. *Learn*, 396 Ill. App. 3d at 898-900. She was unable to answer a single question about the alleged sexual abuse, and therefore the *Learn* court found that, because none of her testimony was "accusatory," there was nothing for the defendant to cross-examine her about. *Id.* at 901.

¶ 38    We make a critical distinction between whether a witness provided "testimony" under section 115-10(b)(2)(A) and whether a witness was "available" for purposes of the confrontation clause.[4] *Learn* endeavored to examine the meaning of " 'testifies at the proceeding' " under section 115-10(b)(2)(A). *Id.* at 900 (quoting 725 ILCS 5/115-10(b)(2)(A) (West 2002)). It found that the statute did "not merely require that the child be 'available' to testify or be sworn in and available for cross-examination." *Id.* Impliedly, "testimony" required more than "availability." Here, however, defendant argues the issue of availability under the confrontation clause. Whether a witness's testimony at trial was sufficiently "accusatory" is the question *Learn* sought to address under section 115-10(b)(2)(A); it is not the question we ask here, to determine whether a witness was available for purposes of the confrontation clause. Rather, we turn to the cases that the State cites in its brief addressing the availability of a witness, both in general and when, as here, the witness has gaps in memory. See *Owens*, 484 U.S. at 558-60; *Fensterer*, 474 U.S. at 19; *Sutton*, 233 Ill. 2d at 123; *Redd*, 135 Ill. 2d at 310; *Flores*, 128 Ill. 2d at 88-90; *Sundling*, 2012 IL App (2d) 070455-B, ¶¶ 45-67; *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶¶ 50-70; *Martin*, 408 Ill. App. 3d at 897; *Bryant*, 391 Ill. App. 3d at 1083; *Bueno*, 358 Ill. App. 3d at 153-55. Generally, if a witness physically appears, takes the stand under oath, and willingly answers counsel's questions, that witness is "available" for cross-examination for purposes of the confrontation clause. See *Bryant*, 391 Ill. App. 3d at 1082. Accordingly, we find *Learn* readily distinguishable and proceed with our analysis by considering cases that address the issue of availability under the confrontation clause.[5]

---

[4]While the special concurrence argues that *Learn* was wrongly decided, we note that this case is readily distinguishable from *Learn* and therefore do not address the soundness of *Learn* one way or another.

[5]We are mindful that, after this case was argued, our supreme court decided *In re Brandon P.*, 2014 IL 116653, in which the court held that a child was unavailable as a witness within the context of section 115-10. Citing *People v. Stechly*, 225 Ill. 2d 246, 315 (2007), the court found that the child was unavailable based upon her youth and fear, as she "could barely answer the trial court's preliminary questions, and then completely froze when the State attempted to begin its direct examination of her." *In re Brandon P.*, 2014 IL 116653, ¶¶ 46-47.

- 10 -

¶ 39 Here, the State asked D.C. about events related to the alleged sexual acts. D.C. answered that defendant would put lotion on her while she was naked and would rub it on her "private." Despite initially answering "no" to whether anyone touched her inappropriately, she testified to telling Cierra that defendant had rubbed his "thing" across her butt. She also testified to telling Aaliyah that someone had touched her inappropriately. She testified that she did not remember her answer when asked by the woman at the Children's Center whether someone had touched her inappropriately, but she did remember going to the Children's Center, talking with a woman there, and using pictures to identify body parts of boys and girls.

¶ 40 Defendant's decision not to cross-examine D.C. did not mean that he did not have the *opportunity* to cross-examine her, which is what the confrontation clause guarantees. See *Martin*, 408 Ill. App. 3d at 896. The State directly asked her about what happened with defendant in the bedroom after her showers, whether anyone touched her inappropriately, and what she told the three aforementioned people, and she responded to all of the State's questions. The State asked D.C. about the material facts it needed to establish in its case, and she responded to the questions. Importantly, she was present at trial, willing to answer questions, and could have answered defense counsel's questions on any of these matters had counsel chosen to cross-examine her. See *Martin*, 408 Ill. App. 3d at 896 (lack of memory of previous events does not violate confrontation clause when witness appears at trial, answers questions, and is cross-examined); *Bryant*, 391 Ill. App. 3d at 1083 (despite her apparent unwillingness to testify on direct examination to alleged sexual act, child appeared for purposes of confrontation clause when she was present for cross-examination but defendant did not question her about the alleged sexual act); *People v. Leonard*, 391 Ill. App. 3d 926, 934 (2009) (witness is generally considered subject to cross-examination when he or she takes the stand and willingly answers questions); see also *People v. Miles*, 351 Ill. App. 3d 857, 864 (2004) (when declarant appears for cross-examination, the confrontation clause does not restrict the use of prior testimonial statements).

¶ 41 D.C. did, in fact, respond to all questions posed to her by counsel, albeit at times responding that she did not know or did not remember. Our supreme court has noted that, while it is "not unsympathetic to the State's concern that child abuse victims are often unavailable to testify because of their tender years," "[w]e may not abridge constitutional guarantees simply because they are a hindrance to the prosecution of child sexual abuse crimes." *In re Rolandis G.*, 232 Ill. 2d at 36. Whereas the State might find that the confrontation clause occasionally hinders a child-sexual-abuse prosecution, the defense might find at times, as here, that the confrontation clause does not alleviate all challenges for an effective cross-examination of a child witness. As we have noted, it is well established that the confrontation clause generally guarantees not that cross-examination is effective in whatever way the defense might wish, only that the defense has an opportunity for effective cross-examination. *E.g.*, *Fensterer*, 474 U.S. at 20. Here, because D.C. was physically

We distinguish this case from *In re Brandon P.*, in that D.C. testified at trial that defendant rubbed lotion on her while she was naked, including on her "private," that she told Cierra that defendant rubbed his "thing" across her butt, and that she told Aaliyah that someone had touched her inappropriately. While she did not remember all of the answers she gave to the woman at the Children's Center when asked about someone inappropriately touching her, she did remember going to the Children's Center, talking to the woman, and using pictures to identify the body parts of boys and girls.

- 11 -

present and willingly answered counsel's questions, she was available as a witness for purposes of the confrontation clause, despite her gaps in memory.

¶ 42    Turning back to the postconviction petition itself, although a claim of ineffective assistance of counsel is cognizable in a petition under the Act (*People v. Haynes*, 192 Ill. 2d 437, 476-80 (2000)),[6] defendant's claim here lacks an arguable basis in law. For the aforementioned reasons, the trial court did not violate defendant's right to confront D.C., because the record shows that she was available as a witness at trial. Therefore, appellate counsel's failure to raise the issue on direct appeal was not objectively unreasonable and did not prejudice defendant, and the trial court was correct to dismiss the petition at the first stage.

¶ 43                                    III. CONCLUSION

¶ 44    Defendant did not raise the gist of a constitutional claim of ineffective assistance of appellate counsel. There was no basis in law to argue that the admission of D.C.'s videotaped statements violated the confrontation clause, because the record clearly demonstrated that D.C. was available as a witness for cross-examination at trial, her gaps in memory notwithstanding. Our opinion in *Learn* does not control here, as it is distinguishable, and we instead apply the well-established precedent that, if a declarant is physically present at trial and willing to answer questions, the confrontation clause does not preclude or restrict the use of hearsay evidence. Accordingly, the trial court properly dismissed defendant's postconviction petition at the first stage as frivolous and patently without merit, and we affirm the judgment of the circuit court of Winnebago County.

¶ 45    Affirmed.

¶ 46    JUSTICE SCHOSTOK, specially concurring.

¶ 47    *People v. Learn* has been described as "a case that much of the Illinois judiciary has distanced itself from" and that "no court has cited approvingly." *In re Brandon P.*, 2013 IL App (4th) 111022, ¶ 44. The reason why our courts so abhor that case is obvious: *Learn* was wrongly decided. See Robert J. Steigmann, *When Hearsay Testimony Is a Nonevent Under the Confrontation Clause*, 96 Ill. B.J. 304, 308 (2008) (repudiating *Learn* because it rejects 20 years of Illinois jurisprudence construing and upholding the admissibility of prior

---

[6]Claims of ineffective assistance of appellate counsel are evaluated under the same two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Haynes* outlined how the test applies to claims of ineffective assistance of appellate counsel:

"A defendant who contends that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that the decision prejudiced the defendant. Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. Accordingly, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." (Internal quotation marks omitted.) *Haynes*, 192 Ill. 2d at 476.

inconsistent statements under section 115-10.1).[7] Rather than trying to parse the language in *Learn* and distinguish it from the instant case, this court should acknowledge that our decision in *Learn* was erroneous and thereby excuse the State from having to distinguish *Learn* in every future case that involves facts similar or nearly identical to those in *Learn*.

¶ 48   In *Learn*, the four-year-old alleged victim made certain statements to her father and two police officers, indicating that the defendant had sexually abused her. *Learn*, 396 Ill. App. 3d at 893. Following a section 115-10 hearing, the trial court determined that the victim's father and the two police officers could testify at trial as to the victim's statements, provided that the victim testified at trial and was subject to cross-examination. *Id.* at 894. At trial, the victim appeared and was subject to cross-examination. *Id.* at 897. However, after she began crying, the State stopped questioning her. *Id.* at 896. Defense counsel then asked the victim five questions. *Id.* at 897. Defense counsel elicited from the victim that she had never told her father anything about the defendant. *Id.*

¶ 49   On appeal, the defendant argued that the trial court erred in admitting the victim's out-of-court statements as substantive evidence at trial. *Id.* The *Learn* court agreed, determining that the statements were improperly admitted under both section 115-10 and *Crawford* because the victim did not testify at trial. *Id.* at 898-902. The *Learn* court found that, because the alleged victim had answered only general questions without testifying about the alleged offense, she had not really testified at trial. *Id.* at 898. In support of its determination, the *Learn* court relied on language in *Crawford* that a declarant appears for purposes of the confrontation clause where " 'the declarant is present in court *to defend or explain*' his out-of-court statement." (Emphasis in original.) *Id.* at 899 (quoting *Crawford*, 541 U.S. at 59 n.9).

¶ 50   The *Learn* court took the above passage from *Crawford* out of context, which is evident from a reading of the entire relevant section:

> "Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See *California v. Green*, 399 U.S. 149, 162 (1970). It is therefore irrelevant that the reliability of some out-of-court statements ' "cannot be replicated, even if the declarant testifies to the same matters in court." ' *Post*, at 74 (quoting *United States v. Inadi*, 475 U.S. 387, 395 (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See *Tennessee v. Street*, 471 U.S. 409, 414 (1985).)" *Crawford*, 541 U.S. at 59 n.9.

[7]This court originally issued its opinion in *Learn* on March 2, 2007. *People v. Learn*, 371 Ill. App. 3d 701 (2007). Our supreme court instructed this court to vacate its judgment and reconsider the case in light of *In re Rolandis G.*, 232 Ill. 2d 13 (2008). See *People v. Learn*, 231 Ill. 2d 644 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal). Upon reconsideration, this court reached the same decision in 2009 as it had in 2007. Justice Steigmann's critique of *Learn* is based on this court's 2007 decision. However, as this court's analysis in its 2007 decision is substantively the same as in its 2009 decision, it is apparent that Justice Steigmann's critique of *Learn* applies equally to the 2009 decision.

¶ 51    In context, it is apparent that the Supreme Court is referring to being present to "defend or explain" an out-of-court statement as synonymous with being subject to cross-examination. See *id*. This conclusion is consistent with prior Supreme Court decisions that were neither overruled nor called into question by *Crawford*. See *People v. Bryant*, 391 Ill. App. 3d 1072, 1080 (2009) (citing *Delaware v. Fensterer*, 474 U.S. 15 (1985), and *United States v. Owens*, 484 U.S. 554 (1988)). In *Fensterer*, at issue was whether an expert's opinion testimony should be excluded because, when he testified about evidence that was important in linking the defendant to the murder, the expert was unable to recall the theory upon which his opinion was based. In other terms, the expert could neither defend nor explain the basis of his opinion. The Delaware Supreme Court held that, absent an acknowledgment by the expert of the basis of his opinion, " 'defense counsel's cross-examination of the [witness] was nothing more than an exercise in futility.' " *Fensterer*, 474 U.S. at 18 (quoting *Fensterer v. State*, 493 A.2d 959, 964 (Del. 1985)). In reversing, the Supreme Court stated: "Generally speaking, the [c]onfrontation [c]lause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Id*. at 20.

¶ 52    In *Owens*, the victim testified that he remembered identifying the defendant as his assailant during an interview with an FBI agent. However, at trial, the victim testified that he could not remember seeing his assailant at the time of the attack. The Supreme Court held that "neither the [c]onfrontation [c]lause nor Federal Rule of Evidence 802 is violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." *Owens*, 484 U.S. at 564. The Supreme Court determined that the defendant's rights under the confrontation clause were not violated, because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id.* at 560. The Supreme Court additionally stated that it did not believe that a "constitutional line drawn by the [c]onfrontation [c]lause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect." *Id*.

¶ 53    In *People v. Flores*, 128 Ill. 2d 66, 90 (1989), the Illinois Supreme Court adopted the analysis set forth in *Fensterer* and *Owens*. See *Bryant*, 391 Ill. App. 3d at 1082. In *Flores*, the supreme court rejected the defendant's argument that a witness's professed memory loss as to the content of a conversation he had with the defendant deprived defense counsel of an opportunity to cross-examine the witness concerning the conversation. *Flores*, 128 Ill. 2d at 90. In *People v. Redd*, 135 Ill. 2d 252, 310 (1990), relying on *Owens*, the supreme court stated: "As long as the [hearsay] declarant is actually testifying as a witness and is subject to full and effective cross-examination, then the confrontation clause is not violated by admitting the out-of-court statement of the declarant." *Redd*, 135 Ill. 2d at 310.

¶ 54    Prior to the *Learn* court's decision, the Appellate Court of Illinois had uniformly held that, if a witness appears for cross-examination at the defendant's trial, the confrontation clause does not bar the admission of the witness's hearsay statements. See *Bryant*, 391 Ill. App. 3d at 1095-96 (listing 24 cases that were decided over a 20-year period that are inconsistent with the rationale set forth in *Learn*). Furthermore, as noted above, no court has subsequently adopted the *Learn* court's holding, including this court. See *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 66 ("where the declarant appears for

cross-examination at trial, the confrontation clause places no constraints at all on the use of his prior testimonial statements"); *People v. Sundling*, 2012 IL App (2d) 070455-B, ¶ 66 (explaining that supreme court did not express approval of the entire analysis in *Learn* merely because it denied State's petition for leave to appeal in that case).

¶ 55    Furthermore, not only is the *Learn* decision contrary to the precedent of the United States Supreme Court, the Illinois Supreme Court, and the Illinois Appellate Court in terms of its analysis of the confrontation clause, the *Learn* decision also overlooks a fundamental aspect of cross-examination. By emphasizing that a witness must "defend or explain" a prior statement on cross-examination, the *Learn* court failed to consider another crucial aspect of cross-examination: a witness may *deny* having made the prior statement. See *People v. Miller*, 363 Ill. App. 3d 67, 74 (2005) (citing Michael H. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.11, at 446 (8th ed. 2004) (setting forth that cross-examination can be used to elicit facts from the witness that are favorable to the defendant's case or modify the witness's testimony regarding any unfavorable versions of disputed facts given on direct examination)). When a witness denies having made a previous statement, a defendant can then use that testimony to bolster his defense and set up an impeachment for anyone who claims that the witness had made a statement implicating the defendant in the commission of a crime. See *id.* at 75.

¶ 56    Beyond its misinterpretation of *Crawford* and the other applicable law, the *Learn* court's analysis needs to be rejected also because it is contrary to our supreme court's most recent pronouncement on the admissibility of evidence pursuant to section 115-10. See *In re Brandon P.*, 2014 IL 116653. In *Brandon P.*, our supreme court emphasized that a trial court's ruling on the admissibility of such evidence should not be disturbed unless it demonstrates a clear abuse of discretion. *Id.* ¶ 45 (citing *People v. Stechly*, 225 Ill. 2d 246, 312 (2007)). The supreme court then criticized the appellate court for conducting its own *de novo* review of the record as to the admissibility of the witness's testimony rather than reviewing the trial court's decision for an abuse of discretion. *Id.* The *Learn* court employed the very same standard of review that was criticized in *Brandon P*. See *Learn*, 396 Ill. App. 3d at 905 (explaining that it had decided the issue "on statutory grounds").

¶ 57    It is apparent that, if the *Learn* court had not taken the language in *Crawford* out of context and had employed the proper standard of review, the outcome in that case would have been different. In *Learn*, as noted, the victim testified at trial and was subject to cross-examination. *Id.* at 897. This is all that *Crawford* and section 115-10 required for admission of her statements to her father and the police officers. See *Bryant*, 391 Ill. App. 3d at 1094-95; *People v. Monroe*, 366 Ill. App. 3d 1080, 1088 (2006); *Miller*, 363 Ill. App. 3d at 75. Thus, the trial court in *Learn* did not abuse its discretion in determining that the statements at issue were admissible. As the *Learn* court's interpretation of *Crawford* and section 115-10 is contrary to that of every other Illinois court that has considered the issue, the time has come for this court to acknowledge that *Learn* was wrongly decided.