**2025 IL 130988**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130988)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
SIDNEY BUTLER, Appellant.

*Opinion filed November 20, 2025.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Theis, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

Justice Rochford took no part in the decision.

## OPINION

¶ 1    Following a jury trial, the Cook County circuit court sentenced defendant, Sidney Butler, to consecutive prison terms of 9 years for predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), 9 years for aggravated criminal sexual assault (*id.* § 11-1.30(b)(i)), and 3 years for aggravated criminal

sexual abuse (*id.* § 11-1.60(c)(2)(i)), for a total prison term of 21 years. The Appellate Court, First District, affirmed defendant's convictions, holding, *inter alia*, that the circuit court properly admitted into evidence at trial out-of-court statements made by defendant's younger half-sister and victim, K.P., during a video recorded, victim-sensitive interview because K.P. testified and was available for cross-examination at trial. 2024 IL App (1st) 211175-U, ¶ 1. Thereafter, this court granted defendant's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023)), in which defendant argued that K.P.'s recorded interview was improperly admitted as evidence because K.P.'s inadequate testimony at trial made her unavailable for cross-examination under section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10(b)(2)(A) (West 2014)) in violation of the confrontation clause of the sixth amendment of the United States Constitution (U.S. Const., amend. VI) and article I, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, § 8). For the following reasons, we affirm the judgments of the appellate and circuit courts.

¶ 2                                                  BACKGROUND

¶ 3        On June 4, 2015, defendant was charged in a 10-count indictment with 2 counts of predatory criminal sexual assault of a victim under 13 years old (720 ILCS 5/11-1.40(a)(1) (West 2012)), 2 counts of aggravated criminal sexual assault of a victim under 9 years old (*id.* § 11-1.30(b)(i)), aggravated criminal sexual abuse of a family member under 18 years old (*id.* § 11-1.60(b)), 2 counts of aggravated criminal sexual abuse of a victim under 13 years old (*id.* § 11-1.60(c)(1)(i)), and 2 counts of aggravated criminal sexual abuse of a victim under 9 years old (*id.* § 11-1.60(c)(1)(i), (2)(i)). Prior to defendant's trial, the State requested a hearing, pursuant to section 115-10 of the Code (725 ILCS 5/115-10(b)(1) (West 2014)), on the admissibility of the video recorded interview of K.P. when she was nine years old. Accordingly, beginning on January 24, 2017, the circuit court held a hearing outside the presence of the jury to assess whether "the time, content, and circumstances of the statement provide[d] sufficient safeguards of reliability" for its admission. See *id.*

¶ 4        At the hearing, which continued into 2018, forensic interviewer Alison Alstott testified that she interviewed K.P. one-on-one at the Chicago Children's Advocacy

Center on November 10, 2014. After reciting her credentials, Alstott explained that she followed a protocol for the interview that involved open-ended, nonsuggestive questioning. Alstott also testified that, after building a rapport with K.P., she reviewed whether K.P. was able to distinguish between the truth and a lie and secured K.P.'s promise to talk about only the truth. Alstott testified that, prior to the interview with K.P., she received limited information and did not review any police reports or other documentation.

¶ 5        The video recording of the victim-sensitive interview was entered into evidence at the hearing. During the interview, K.P. stated that she was nine years old, in third grade, and living with her mother, her sister, and a brother other than defendant. K.P. stated that Roland Pierce[1] stayed at her house and was "mean." K.P. explained that a few days prior, Pierce had hit her with his boots, hand, and belt; he had spit in her face and cursed at her; and he had told her to go to the basement to sleep. K.P. stated that Pierce was angry because she was "touching on" Pierce's younger daughter. K.P. stated that, when confronted by Pierce, she had told Pierce that her brothers and cousin had "touched on" her and that her brothers had told her to be quiet about it.

¶ 6        During the interview, K.P. stated that defendant last "touched on" her in 2013[2] because he had moved from her home that year. K.P. stated that defendant in 2013 made her "suck his private part" and "put his private part in [her] butt." K.P. stated that, when he put his private part in her butt, he grabbed her and said not to tell anyone, making her pinkie promise. K.P. stated that the incident occurred in the living room at her family's previous house. K.P. stated that her other brother was gaming with headphones and that her sister was sleeping.

¶ 7        K.P. stated that defendant made her "suck his private part" first and that his private part was "dark and hairy and stuff." K.P. stated that defendant "pulled his private part out," pulled her panties down, and "put his private part in [her] butt *** and [that] it hurt." When asked, K.P. answered that defendant put his private part

---

[1]K.P. referred to Pierce as her father during the interview but later referred to him during her testimony at trial as her mother's boyfriend.

[2]Defendant was born in September 1995, and K.P. was born in September 2005. Accordingly, in 2013, defendant was 17 or 18 years old, and K.P. was 7 or 8 years old.

in the line, not in the hole of her butt. K.P. stated that defendant was standing up and moving, and K.P. demonstrated a thrusting motion.

¶ 8        K.P. stated that she was very small, around four years old, when defendant first began "doing stuff" to her when her parents were not home. K.P. stated that, when she was five years old, her younger sister helped her by pulling her away once when defendant wanted K.P. to "suck his private part." K.P. stated that she ran to the bathroom and acted like she was using the bathroom so defendant would not come into the bathroom. K.P. stated that defendant made her suck his private part more than five times and put his private part in her butt more than five times.

¶ 9        By stipulation at the hearing, defendant submitted Pierce's handwritten statement, which Pierce had provided to police on December 30, 2014. In the statement, Pierce recounted that on November 5, 2014, he confronted K.P. with sexual allegations involving his younger daughter. Pierce stated that K.P.'s mother smacked her with an open hand and an orange extension cord and that he beat K.P. with his belt until his belt snapped. Pierce stated that, while they were beating K.P., she was screaming that she deserved to die.

¶ 10        At the close of the hearing, the State argued that the victim-sensitive interview exhibited sufficient safeguards of reliability to be admissible under section 115-10 of the Code (*id.* § 115-10). The State noted that K.P. gave detailed descriptions of her abusers' genitals and of sexual conduct beyond the knowledge of a normal nine-year-old. In addition, the State noted that she gave specific and unique details of different incidents involving different abusers, including details of defendant's abuse. Defendant argued that K.P.'s statements were coerced by the vicious beating she endured a few days before the interview and, therefore, the interview was not sufficiently reliable to justify its admission. On August 8, 2018, the circuit court deemed the statement sufficiently reliable and ruled that it would be admissible at trial if K.P. testified. See *id.* § 115-10(b).

¶ 11        At trial in March 2019, the State proceeded on seven counts charged in the indictment. The State conceded in opening statements that it was uncertain how K.P. would testify when she took the stand but explained that the jury would review both her trial testimony and her video recorded statement from 2014. Defense counsel asserted in opening statements that K.P.'s video recorded statement was unreliable because it followed Pierce's vicious beating of her.

¶ 12    When the State called K.P. to the stand, she initially testified to her name, her age of 13 years old, her seventh grade in school, and her mother's name. She stopped responding when asked the names of her siblings, and the jury was removed from the courtroom. The State opted to call another witness and recall K.P. later in the day.

¶ 13    Accordingly, Chicago police detective Ian Barclay testified that on November 10, 2014, K.P.'s grandmother brought her to the Chicago Children's Advocacy Center and K.P. was interviewed by Alstott in one of its pods (consisting of an outer conference room, an observation room, and an interview room). Barclay testified that he, along with Department of Children and Family Services worker Cynthia Pettis, observed K.P.'s entire interview from an observation room. Barclay attested to the accuracy of the recorded interview.

¶ 14    When the State recalled K.P., the court allowed the State to ask leading questions, considering K.P. as a hostile witness. K.P. testified that she previously lived in a house with her family before moving down the street to what had been her grandmother's house. K.P. testified that she had lived at her family's previous house with her mother, brother, sister, and defendant at eight or nine years old. K.P. testified that she had also lived with Pierce. K.P. then answered, "I don't know" to the question of whether defendant ever babysat her, nodded her head in the affirmative to a few questions, and was unresponsive to other questions.

¶ 15    At that time, the jury was excused, and an attorney seated in the gallery alerted the court that K.P.'s and defendant's mother appeared to be standing, signaling, and waving at K.P. during her earlier testimony. Thus, the court admonished K.P.'s mother that she would be subject to contempt of court if she tried to influence the witness by making signals to her on the witness stand, and the court admonished K.P. that she needed to answer the questions with words and be honest.

¶ 16    The jury returned to the courtroom, and K.P. thereafter testified that defendant was her brother and that he had lived with K.P. at her mother's house. When asked whether she could recall an incident when defendant did something to her, K.P. stated, "I don't remember." K.P. initially testified that she did not remember being interviewed in November 2014, but when shown a still image taken from the video recording at the Chicago Children's Advocacy Center, K.P. testified, "Oh, yes, I remember," identified herself, and agreed that the still image from the video

recorded interview was of her. She testified that she remembered talking to Alstott in the screenshot photo and that she was nine years old at the time of the interview. K.P. testified that she was there for an interview due to "household issues" with Pierce, who had hurt her and caused her to go to the hospital. She answered "[y]es" when asked, "In this interview, do you remember talking about anything else that anybody else did to you?" When asked who, she identified defendant. K.P. testified that she remembered "bringing up" defendant's name during the interview.

¶ 17   The State then asked a series of questions referencing the previous questions she answered during the recorded interview, and K.P. responded to each question that she did not remember the question-and-answer or the event described. Thus, she testified that she did not remember previously stating during the interview that defendant had "touched on" her; that she was four the first time defendant did something to her; that defendant last touched her before he moved out in 2013, when he made her suck his private part and tried to put his private part in her butt; that when he put his private part in her butt, he grabbed her and said not to tell, making her pinkie promise; that these occurrences happened in the living room of her old house; that defendant made her suck his private part first, that it was "dark and hairy and stuff," and that defendant then put his private part in the line of her butt and "it hurt"; that her sister helped her by pulling her away once when defendant tried to make her suck his private part; that defendant made her suck his private part more than five times; or that he put his private part in her butt more than five times.

¶ 18   On the cross-examination, defense counsel asked K.P. about the incident with Pierce, and she answered in the affirmative that Pierce had whipped her with a belt, extension cord, boots, and a video game on her legs, arms, and stomach many times. K.P. agreed that Pierce had "accuse[d]" her of "doing something with" her younger relatives, that he had beaten her with his belt and an extension cord, and that he had forced her to sleep on the cold basement floor for two nights without a mattress, blanket, or food. She identified photographs of her injuries, taken at the hospital where she was treated, before she gave the videotaped statement. Defense counsel did not ask any questions concerning the substance of K.P.'s recorded statements. However, defense counsel asked whether K.P. was still suffering from the pain from her injuries at the time of the recorded interview, and K.P. agreed that she

was. K.P. testified that, during the interview, she still remembered what Pierce had done to her.

¶ 19    Alstott testified to the victim-sensitive interview. During cross-examination, Alstott acknowledged that during the interview K.P. had been looking at the wounds on her arms and touching the wounds on her back.

¶ 20    The State moved to publish K.P.'s victim-sensitive interview by playing it for the jury. Defendant objected, arguing that the State had not established a sufficient foundation and that K.P. had not "testified adequately to allow the video to be played." Defendant argued that K.P. did not adequately testify because she made no accusations against defendant on the stand, did not remember her accusations during the interview, and did not remember defendant committing any of the alleged offenses. The circuit court overruled the objection and allowed the State to publish the video.

¶ 21    For the defense, K.P.'s mother testified to Pierce's abuse of K.P. She testified that defendant lived with her, Pierce, and her other children at their previous house in November 2014. She testified that defendant is 10 years older than K.P., that K.P.'s other brother is 6 years older than K.P., and that K.P. is 1 year older than her sister. K.P.'s mother testified that she called the police because Pierce was "abusive to everyone in the house" and "was talking about sexual allegations going around." She testified that the "beating happened for everyone" because Pierce "was like outraged that something *** happened *** to his other little kids." She testified that there was something allegedly happening sexually between K.P. and Pierce's other two daughters, who were younger than K.P., and that Pierce wanted to get some answers as to how K.P. knew how to do some things.

¶ 22    In closing, the defense again argued that the circumstances of Pierce's beating of K.P. rendered K.P.'s statements during the interview too unreliable to establish defendant's guilt beyond a reasonable doubt. Nevertheless, the jury returned guilty verdicts on the remaining seven counts of the indictment. Thereafter, defendant filed a motion for new trial, arguing, in relevant part, that the circuit court erred by admitting K.P.'s recorded interview statements, and the circuit court denied the motion. After vacating two remaining counts and merging three counts of aggravated criminal sexual abuse into one, the circuit court sentenced defendant to consecutive terms of 9 years for predatory criminal sexual assault (count I) (720

ILCS 5/11-1.40(a)(1) (West 2012) (an act of sexual penetration by a person 17 years of age or older with a victim under 13 years of age)), 9 years for aggravated criminal sexual assault (count III) (*id.* § 11-1.30(b)(i) (an act of sexual penetration by a person under 17 years of age with a victim under 9 years of age)), and 3 years for aggravated criminal sexual abuse (count IX) (*id.* § 11-1.60(c)(2)(i) (an act of sexual conduct by a person under 17 years of age with a victim who is under 9 years of age)), for a total prison term of 21 years.

¶ 23                                    Appellate Court

¶ 24        On appeal, defendant argued that the circuit court erroneously admitted into evidence K.P.'s victim-sensitive interview, which he argued was the only evidence supporting the allegations against him. He claimed both that the interview did not meet the conditions for admission under section 115-10 of the Code (725 ILCS 5/115-10(b)(2)(A) (West 2014)) and that its admission violated his constitutional right to confront witnesses (U.S. Const. amend. VI; Ill. Const. art. I, § 8). He contended that K.P. did not "testif[y]" for purposes of both section 115-10 and the sixth amendment's confrontation clause because she failed to accuse defendant of any abuse when she testified. Defendant argued that, because K.P. made no accusations to cross-examine her about and no other evidence corroborated the allegations made by K.P. during the interview, her out-of-court statements during the interview were improperly admitted at trial. 2024 IL App (1st) 211175-U, ¶ 33.

¶ 25        The appellate court affirmed defendant's convictions, holding that K.P.'s testimony satisfied section 115-10 of the Code to render her out-of-court statements during the interview admissible and that K.P. was available for cross-examination, satisfying defendant's constitutional right to confront her. *Id.* ¶¶ 39-42. The appellate court reviewed the Second District's decision in *People v. Learn*, 396 Ill. App. 3d 891, 900 (2009) (appellate court found that the admission of out-of-court statements describing sexual abuse was error because, in failing to accuse defendant of the sexual abuse during her trial testimony, the victim did not testify for purposes of section 115-10 or the confrontation clause). The appellate court below distinguished *Learn*, finding that, unlike the child witness in *Learn*, K.P. sufficiently testified at trial for purposes of section 115-10. 2024 IL App (1st)

211175-U, ¶ 40. The appellate court also concluded that *Learn* did not reflect the current state of Illinois law on this issue. *Id.* ¶ 39.

¶ 26        The appellate court held that the "testimony requirement of section 115-10 requires no more than the witness's availability for cross examination—the same requirement to satisfy the confrontation clause." *Id.* ¶ 40. The appellate court held that, "[s]o long as a witness appears for cross examination, the confrontation clause does not require that a witness testify to the substance of their out-of-court statements for those statements to be admissible." *Id.* The appellate court concluded that "[a] witness will be found to have been available for cross examination if the witness was present in court and answered all the questions asked of them by defense counsel." *Id.*

¶ 27        The appellate court noted that, although K.P. was a reluctant witness for the prosecution, "no reluctance was apparent during her cross examination" and that, indeed, her "testimony on cross examination aligned with [defendant's] theory of the case." *Id.* ¶ 41. The appellate court held that, even though defense counsel opted out of questioning K.P. about her recorded statement, its option was "of no moment" because "the opportunity for cross examination satisfies the appearance requirement, irrespective of how the defendant chooses to cross examine the witness." *Id.* The appellate court thus concluded that K.P.'s testimony satisfied section 115-10 of the Code to make her out-of-court interview admissible and that defendant's confrontation rights were not violated because K.P. was available for cross-examination. *Id.* ¶ 42.

¶ 28        On November 27, 2024, this court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 29                                                      ANALYSIS

¶ 30        Defendant takes issue with the circuit court's decision to allow a copy of K.P.'s victim-sensitive interview to be published to the jury pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2014)), which allows, in pertinent part, certain out-of-court statements to be admitted as evidence as an exception to the hearsay rule so long as the statement provides sufficient safeguards of reliability and the witness also testifies at trial. Defendant argues that, in failing to testify to the sexual

- 9 -

assault or to her statements during the interview regarding the sexual assault, K.P did not "testif[y]" pursuant to section 115-10 of the Code (*id.*) and, therefore, the circuit court improperly admitted her out-of-court recorded statement as evidence at trial. Likewise, defendant argues that, because K.P. did not testify to any incidents of sexual assault or to remembering the discussion of any sexual assault during the interview, she was not available for cross-examination pursuant to the federal and state confrontation clauses. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8.

¶ 31    This court reviews for an abuse of discretion whether the admissibility requirements of section 115-10 of the Code (725 ILCS 5/115-10 (West 2014)) were satisfied. *In re Brandon P.*, 2014 IL 116653, ¶ 45. However, "[a]n issue of statutory interpretation *** presents a question of law, which we review *de novo*." *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). Moreover, "defendant's claim that his sixth amendment right to confront a witness against him was violated presents a question of law," which we review *de novo*. *People v. Leach*, 2012 IL 111534, ¶ 64.

¶ 32    "When a court is asked to evaluate the admission of out-of-court statements into evidence, the *first* step is determining whether the statement passes muster as an evidentiary matter" pursuant to the statute. (Emphasis in original.) *In re E.H.*, 224 Ill. 2d 172, 179 (2006). "If the proponent seeks to admit the statement pursuant to section 115-10 [of the Code], the statement must be evaluated to see whether it meets that statute's requirements; if it is sought to be admitted pursuant to an exception to the hearsay rule, that claim must be evaluated." *Id.* Once the statement has been found admissible as an evidentiary matter, the court will address constitutional objections—including *Crawford*-based confrontation clause claims. *Id.* at 179-80; see *Crawford v. Washington*, 541 U.S. 36 (2004).

¶ 33                    Section 115-10 of the Code

¶ 34    Defendant argues that, in failing to testify at trial to the sexual assault or to acknowledge her prior allegations, K.P. did not "testif[y]" pursuant to section 115-10(b)(2)(A) of the Code and, therefore, the circuit court improperly admitted into evidence at trial her out-of-court statements in the recorded interview. The State counters that a child witness need only present some evidence at trial for her to have "testifie[d]" and her out-of-court statements to be properly admitted. The State

concedes that "the mandate that the child actually testify at trial, rather than merely being made 'available' for testimony," places the burden on the State to call the child to the stand to "spare[ ] the defense from a 'Catch 22' of either having to call the child itself and risk inflaming the jury against it, or [forgo] completely its right to cross-examine the child." See *People v. Bowen*, 183 Ill. 2d 103, 115 (1998). The State argues, however, that beyond the requirement that it call the victim to testify, the statutory language imposes no specific requirements on the substance of the victim's testimony. The State argues that it complied with this requirement by calling K.P. to the stand and placing her under oath, making her available for cross-examination. The State argues that this court should interpret "testif[y]" for purposes of section 115-10 to include testimony that a witness does not remember or does not know the answer to a question.

¶ 35    Section 115-10 provides:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child ***

(A) testifies at the proceeding; or

- 11 -

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115-10(a), (b)(1)-(2) (West 2014).

¶ 36 "[S]ection 115-10 was a needed response to the difficulty of convicting persons accused of sexually assaulting children." *Bowen*, 183 Ill. 2d at 115. "It is well known that child witnesses, especially the very young, often lack the cognitive or language skills to effectively communicate instances of abuse at trial [citation], or may be impeded psychologically in their efforts to do so." *Id.*

"Children may be subject to memory loss in the often prolonged period between the abuse and trial, and videotaping the child's account of abuse at the earliest opportunity preserves the account while it is still fresh in the child's memory; in addition, it allows for the examination of the conditions prevalent at the time of the child's initial complaint." *Id.* at 115-16.

Accordingly, "[s]ection 115-10 allows for a child victim's hearsay statement to be admitted *** [where] the court deems the statement reliable and the child testifies at trial (subsections (b)(1) and (b)(2)(A))." *People v. Kitch*, 239 Ill. 2d 452, 467 (2011); see *People v. Cookson*, 215 Ill. 2d 194, 204 (2005) (section 115-10(b)(2)(A)'s requirement that the child be available to testify at the proceeding comports with the sixth amendment's confrontation requirement).

¶ 37 In this case, at issue under section 115-10(b)(2)(A) of the Code is whether K.P. was available and "testifie[d] at the proceeding." See 725 ILCS 5/115-10(b)(2)(A) (West 2014)). Black's Law Dictionary defines "testify" as "[t]o give evidence as a witness." Black's Law Dictionary (12th ed. 2024); see *People v. Castillo*, 2022 IL 127894, ¶ 24 (a dictionary's definition of a statutory term is appropriate to determine the plain, ordinary meaning of the term). At trial, after the initial break and admonishments, K.P. testified that she had lived at her family's previous house with Pierce and her siblings, including defendant, whom she identified in court. K.P. testified that defendant lived with her until he was grown. K.P. testified initially that she did not remember speaking to anyone in November 2014, but she then identified herself in the still photo of the interview and stated, "Oh, yes, I remember." K.P. testified that she remembered talking to Alstott and that she was nine years old at the time. K.P. testified that, although she did not remember what they talked about, she remembered that they were there due to "household issues"

with Pierce. K.P. testified that Pierce hurt her and that she was treated at a hospital. K.P. testified that, after visiting the hospital, she was interviewed about what happened with Pierce. K.P. testified that she remembered talking about something else that someone else did to her. K.P. identified defendant as one of the people that she had mentioned had done something to her. K.P. testified, "I remember bringing up his name" in the interview.

¶ 38        Thereafter, K.P. testified that she did not mention that defendant was one of the individuals who had been touching her. K.P. answered, "No," to whether she remembered each question and answer during the interview. When asked whether she recalled "any of those things happening to you," K.P. answered, "No." K.P. testified that Pierce abused her physically but not sexually.

¶ 39        On cross-examination, K.P. specifically testified to the brutal beating she suffered from Pierce. On cross-examination, K.P. testified that she was still suffering from the resulting injuries during her recorded, victim-sensitive interview with Alstott.

¶ 40        Defendant argues that, because K.P. testified that she had no memory of being assaulted or making accusations during the interview, she was unavailable as a witness and, with no corroborative evidence, the circuit court erred in admitting into evidence her prior statements. See 725 ILCS 5/115-10(b)(2)(B) (West 2014). To support his contention, defendant cites this court's decisions in *Brandon P.*, 2014 IL 116653, ¶ 40, and *In re Rolandis G.*, 232 Ill. 2d 13, 22 (2008).

¶ 41        In *Brandon P.*, the respondent argued that the victim, because of her fear and youth as a preschooler, was unavailable for cross-examination as a witness at respondent's trial, so that the admission of her testimonial hearsay violated respondent's rights under the confrontation clause. *Brandon P.*, 2014 IL 116653, ¶ 40. Unlike here, however, the State in *Brandon P.* conceded that the victim was unavailable to testify at respondent's trial, the circuit court had declared her unavailable based upon both her youth and fear, and this court agreed, noting that the victim "completely froze when the State attempted to begin its direct examination of her." *Id.* ¶ 47. In *Brandon P.*, this court stated:

"M.J. could barely answer the trial court's preliminary questions, and then completely froze when the State attempted to begin its direct examination of

- 13 -

her. The trial court, respondent's counsel, and the assistant State's Attorney, all of whom were present in the jury room and observed M.J.'s attempt to testify, all agreed that M.J. was unavailable. Under the circumstances, the trial court did not abuse its discretion in declaring M.J. unavailable. The appellate court therefore erred in rejecting the State's concession and in finding that M.J. was available to testify for purposes of section 115-10." *Id.*

¶ 42 Likewise, in *In re Rolandis G.*, this court determined that the victim's videotaped statement, sought to be introduced pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2002)), was testimonial in nature and, because the victim did not testify at trial and there was no prior opportunity for cross-examination, it was improperly admitted in violation of respondent's confrontation rights. *Rolandis G.*, 232 Ill. 2d at 46 (admission, though error, was harmless beyond a reasonable doubt under the facts of the case). Yet, like *Brandon P.*, the State on appeal in *Rolandis G.* conceded that the witness was not available to testify at trial. *Id.* at 22. At trial, the child witness answered a few preliminary questions about himself and made an in-court identification of the respondent, stating that the respondent was someone he had known from the neighborhood. *Id.* at 18. However, when asked about the events at issue, the child witness "resolutely refused to respond," and defense counsel declined the opportunity to cross-examine the witness. *Id.*

¶ 43 In contrast, although K.P., who was 13 years old at the time of trial, showed reluctance to testify initially, she did not remain frozen, and she ultimately answered the questions posed of her both during her direct testimony and cross-examination. During her direct testimony, K.P. testified that she remembered talking about something else that someone else did to her during the victim-sensitive interview, identified defendant as one of the people that she had mentioned had done something to her, and testified, "I remember bringing up his name" in the interview. Although she later denied remembering the questions and answers during the interview, her testimony is unlike the preschool victim in *Brandon P.*, who declined to answer out loud and froze after preliminary questions, or the child witness in *Rolandis G.*, who answered some preliminary questions unrelated to the allegations but refused to answer in any form substantive questions regarding the allegations. K.P. did not refuse to answer substantive questions regarding the allegations but answered many of the questions regarding the

allegations of defendant's abuse and her statements to Alstott by testifying, under oath, that she either did not remember or did not know the answer. For example, under oath, K.P. answered "I don't remember" to whether defendant did "anything" to her when she lived at her previous house. K.P. answered, "No," to whether she remembered particular statements she made during the interview, and when asked whether she remembered "anything," K.P. answered, "No." Even so, despite her lack of recall, K.P. appeared at trial, was placed on the stand under oath, and responded to the questions about her prior testimony. See *People v. Flores*, 128 Ill. 2d 66, 87, 90 (1989) (circuit court properly admitted the witness's prior inconsistent grand jury testimony, even though witness could not recall it, where the witness was placed on the stand, under oath, and responded willingly to questions about the prior testimony). K.P. was available and testified at trial.

¶ 44　　For these reasons, we also find defendant's reliance on the decision of the Second District in *Learn*, 396 Ill. App. 3d 891, misplaced. In *Learn*, defendant was charged with one count of aggravated criminal sexual abuse of his four-year-old niece. *Id.* at 893. Prior to trial, the circuit court granted the State's section 115-10 motion to admit out-of-court statements made by the victim to her father and two police officers. *Id.* at 894. The circuit court granted the motion on the condition that the child testify. *Id.* At trial, the victim testified to preliminary matters but then became too emotionally distraught to continue. *Id.* at 896. She stated that she did not know if she would tell the truth, reluctantly admitted that a man with defendant's name even existed, stated only that defendant was her aunt's husband and that she did not like him, and once asked about answering questions at the police station, put her head down and began to cry, upon which the State stopped questioning her. *Id.* at 898. The circuit court concluded that the child testified for purposes of section 115-10 and allowed the State to introduce her hearsay statements. *Id.* The appellate court reversed, holding that the victim did not "testify" within the meaning of the statute. *Id.*

¶ 45　　In *Learn*, the divided appellate court held that the child witness did not testify for purposes of section 115-10 of the Code, in that she was unwilling or unable to testify because of fear, unable to communicate in the courtroom setting, or unable to express herself so as to be understood concerning the matter. *Id.* at 898-99. In *Learn*, the child witness failed to answer the questions presented to her, and thus, she failed to testify pursuant to section 115-10 of the Code. *Id.* at 898. *Learn* is

therefore distinguishable from this case. Here, K.P. willingly answered the questions posed to her, even though she answered many questions with answers that she did not know or that she did not remember. K.P. communicated in the courtroom setting and expressed herself so as to be understood concerning the matter.

¶ 46 Notably, however, in *Learn*, the Second District erroneously misconstrued the United States Supreme Court's decision in *Crawford*, 541 U.S. 36. Accordingly, we find *Learn* not only factually distinguishable, but also, for the following reasons, we reject *Learn*'s analysis regarding the *Crawford*-based confrontation clause claims. We therefore overrule *Learn*.

¶ 47 *Crawford*-Based Confrontation Clause Claims

¶ 48 Defendant argues that, although he had the opportunity to question K.P. on cross-examination and she answered the questions posed to her during cross-examination, his right to confrontation was hampered where he could not ask questions about statements she said she could not remember, based on an alleged assault that on the stand she did not say happened. In other words, defendant argues he could not cross-examine K.P. where she made no accusations again him, responded "no" to whether he assaulted her, and did not remember her accusations during the victim-sensitive interview. Accordingly, defendant argues that, pursuant to *Crawford*, 541 U.S. 36, he was denied the opportunity to test the truth of K.P.'s out-of-court statements.

¶ 49 The State counters that it cannot be that defense counsel's voluntary choice not to cross-examine a witness on a specific topic—in this case, likely because K.P.'s direct testimony was beneficial to the defense—renders that witness unavailable for cross-examination. The State argues that, where K.P. took the stand and voluntarily answered, under oath, all the questions that defense counsel chose to put to her, she was available for cross-examination for purposes of the confrontation clause. We agree.

¶ 50 The confrontation clauses of both our state and federal constitutions guarantee a criminal defendant the right to confront his or her accusers. U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right *** to be

confronted with the witnesses against him ***."); *Pointer v. Texas*, 380 U.S. 400, 406 (1965) (protection of the confrontation guarantee of the sixth amendment extends to state proceedings through the fourteenth amendment (U.S. Const., amend. XIV)); Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her ***.").

¶ 51    "Confrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "The confrontation clause 'provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination.' " *People v. Hood*, 2016 IL 118581, ¶ 19 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)); see *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). " '[C]ross-examination *** cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' " *Davis*, 415 U.S. at 316 (quoting 5 John H. Wigmore, Evidence § 1395, at 123 (3d ed. 1940)). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 316.

¶ 52    The right of confrontation insures that the witness will give statements under oath, impressing her with the seriousness of the matter and guarding against the lie by the potential of a penalty for perjury; it forces the witness to submit to cross-examination and permits the jury to observe the demeanor of the witness in making her statement, thus aiding in the assessment of credibility. *California v. Green*, 399 U.S. 149, 158 (1970). "In operation, the [confrontation clause] protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 783-84 (2024).

> " 'The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner *in lieu* of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he

gives his testimony whether he is worthy of belief.' " (Emphasis added.) *Green*, 399 U.S. at 157-58 (quoting *Mattox v. United States*, 156 U.S. 237, 242-43 (1895)).

¶ 53    In *Crawford*, defendant was tried for stabbing a man who allegedly tried to rape his wife. *Crawford*, 541 U.S. at 38. At defendant's trial for assault and attempted murder, the State sought to introduce a recorded statement that defendant's wife had made during police interrogation, as evidence that the stabbing was not self-defense. *Id.* Defendant's wife did not testify at trial because of the state marital privilege. *Id.* at 40.

¶ 54    In *Crawford*, the defendant argued that admitting the tape-recorded statements to the police as evidence would violate his federal constitutional right to be confronted with the witnesses against him. *Id.* The United States Supreme Court renounced its "unpredictable," "amorphous," and "subjective" test previously found in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), and concluded that the sixth amendment's confrontation clause precludes the use of a testimonial statement made by a witness who does not testify at a criminal trial, unless the witness is unavailable to testify at trial and was previously subjected to cross-examination. *Crawford*, 541 U.S. at 62-63, 68.

¶ 55    In *Crawford*, the Supreme Court reviewed the historical origins of the confrontation clause (*id.* at 43-50), which led the Court to two conclusions: (1) the principal evil the confrontation clause sought to prevent was the civil-law mode of criminal procedure, particularly its use of *ex parte* examinations as evidence against the accused (*id.* at 50), and (2) the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial "unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination" (*id.* at 53-54). Nevertheless, the *Crawford* Court clearly concluded that, "when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9.

¶ 56    Here, the parties do not dispute that K.P.'s prior statements during her video recorded interview at the Chicago Children's Advocacy Center were testimonial in nature. See *People v. Stechly*, 225 Ill. 2d 246, 281 (2007) (when statement is product of questioning by police agent, statement made in a solemn fashion

intended to establish a particular fact is a testimonial statement). The statements were not for the primary purpose of treatment but were for the purpose of establishing whether someone had abused her and, thus, providing information for a future prosecution. *Rolandis G.*, 232 Ill. 2d at 35-36 (child's statements to nurse advocate at children's center were testimonial because primary purpose was to gather information for future prosecution). Accordingly, K.P.'s testimonial statements during the interview were properly admitted into evidence at trial so long as K.P. "appear[ed] for cross-examination at trial." *Crawford*, 541 U.S. at 59 n.9.

¶ 57                                                    *Learn*

¶ 58        Defendant argues that K.P.'s prior testimonial statements were inadmissible at trial because, during her testimony at trial, K.P. failed to remember her prior testimonial statements or the sexual assault and, thus, failed to "defend or explain" her prior accusations. Defendant cites the Supreme Court's statement in *Crawford* that the confrontation clause "does not bar admission of a statement so long as the declarant is present at trial to *defend or explain* it." (Emphasis added.) *Id.* Defendant thus argues that K.P.'s testimony that she did not know or did not remember her prior statements or the sexual assault rendered cross-examination meaningless and violated his right to confrontation.

¶ 59        In making the referenced statement, taken out of context by defendant, the Supreme Court in *Crawford* did not highlight or define to what extent a witness must be able to "defend or explain" the prior statements, and it defies reason to suggest that during cross-examination a witness will consistently defend or explain her prior statements. In earnest, a witness may not remember the prior statement or may deny making the prior statement, both of which allow the factfinder to determine if the prior statement represents the truth. See *Green*, 399 U.S. at 158-59 (when under oath, "witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury," which allows the factfinder to determine "which, if either, of the statements represents the truth"). Instead, the context of the Supreme Court's statement reveals that the phrase "defend or explain" was meant to be synonymous with being subject to cross-examination. See *People v. Kennebrew*, 2014 IL App (2d) 121169, ¶ 51 (Schostok, J., specially concurring)

("In context, it is apparent that the Supreme Court is referring to being present to 'defend or explain' an out-of-court statement as synonymous with being subject to cross-examination."). As noted, two sentences earlier, the Court in *Crawford* stated that, "when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9.

¶ 60    To support his interpretation of *Crawford*, defendant cites *Learn*. In *Learn*, the Second District stated:

"We cannot conclude that a witness's mere presence in court to answer general questions without testifying about the alleged offense is sufficient to qualify as testimony pursuant to section 115-10. In [*Crawford*, 541 U.S. at 59 n.9], the United States Supreme Court described a declarant's appearance, for purposes of a constitutional confrontation clause analysis, as a situation where 'the declarant is present in court to *defend or explain*' his out-of-court statement. (Emphasis added.) While our analysis is not a confrontation clause analysis, the Supreme Court's definition of appearance is equally applicable here." *Learn*, 396 Ill. App. 3d at 899 (specifically emphasizing that the declarant must "defend or explain" the out-of-court statement).

¶ 61    Notably, the Second District in *Learn* announced that its analysis was "not a confrontation clause analysis." *Id.* Even so, the appellate court held that, "[i]f the child is the only witness (other than hearsay reporters) who can accuse the defendant of actions constituting the charged offense, the child must *testify and accuse* if she is to be considered to have testified at the proceeding under section 115-10(b)(2)(A)." (Emphasis added.) *Id.* at 900.

¶ 62    As noted by the State, the appellate court in *Learn* erroneously added a requirement that the child witness not only "testify" but also "accuse." We disagree with, and hereby reject, *Learn*'s suggestion that a child must accuse a defendant at trial of the allegations against him in order to "testif[y]" pursuant to section 115-10(b)(2)(A) or the confrontation clauses found in the federal and state constitutions. This rejection is consistent with the extensive negative treatment Illinois courts, including the Second District itself, have ascribed to *Learn* since that decision was filed. *People v. Graves*, 2021 IL App (5th) 200104, ¶ 39 (citing *People v. Vannote*, 2012 IL App (4th) 100798, ¶ 31, *People v. Sundling*, 2012 IL App (2d) 070455-B,

*People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, and *People v. Martin*, 408 Ill. App. 3d 891 (2011)); see *People v. Bryant*, 391 Ill. App. 3d 1072, 1095-96 (2009) (listing 24 cases decided over a 20-year period that were inconsistent with the rationale found in *Learn*); see also *Kennebrew*, 2014 IL App (2d) 121169, ¶ 47 (collecting cases to support the position that "this court should acknowledge that our decision in *Learn* was erroneous" and misinterpreted *Crawford*).

¶ 63    As noted by Justice Schostok in her special concurrence in *Kennebrew*:

"[N]ot only is the *Learn* decision contrary to the precedent of the United States Supreme Court, the Illinois Supreme Court, and the Illinois Appellate Court in terms of its analysis of the confrontation clause, the *Learn* decision also overlooks a fundamental aspect of cross-examination. By emphasizing that a witness must 'defend or explain' a prior statement on cross-examination, the *Learn* court failed to consider another crucial aspect of cross-examination: a witness may *deny* having made the prior statement. See *People v. Miller*, 363 Ill. App. 3d 67, 74 (2005) (citing Michael H. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.11, at 446 (8th ed. 2004) (setting forth that cross-examination can be used to elicit facts from the witness that are favorable to the defendant's case or modify the witness's testimony regarding any unfavorable versions of disputed facts given on direct examination)). When a witness denies having made a previous statement, a defendant can then use that testimony to bolster his defense and set up an impeachment for anyone who claims that the witness had made a statement implicating the defendant in the commission of a crime. See *id.* at 75." (Emphasis in original.) *Kennebrew*, 2014 IL App (2d) 121169, ¶ 55.

¶ 64    In since distinguishing *Learn*'s holding, the Second District noted that, in both *Learn* and *Rolandis G.*, the issue was one of competency of the witness, where the witness did not answer any substantive questions, as opposed to "such cases [as here] *** where a witness was able to testify and did so willingly, but was unable to remember past events." *Martin*, 408 Ill. App. 3d at 897. In *Martin*, the Second District held that a victim's lack of memory of previous events does not violate the confrontation clause when the witness appears at trial, answers questions, and is cross-examined. *Id.* (the fact that some of the witness's answers were that she did not remember previous events did not make her unable, and thus unavailable, to

testify); see *Kennebrew*, 2014 IL App (2d) 121169 ¶ 41 (majority opinion) (because child victim was physically present and willingly answered counsel's questions, she was available as a witness for purposes of the confrontation clause, despite her gaps in memory).

¶ 65        As indicated, the Second District in *Learn* took the "defend or explain" passage from *Crawford* out of context. The Supreme Court in *Crawford* stated:

> "Finally, we reiterate that, when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements. See [*Green*, 399 U.S. at 162]. It is therefore irrelevant that the reliability of some out-of-court statements ' "cannot be replicated, even if the declarant testifies to the same matters in court." ' *Post*, at 74 (quoting *United States v. Inadi*, 475 U.S. 387, 395 (1986)). The [confrontation] [c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9.

¶ 66                                    *Kitch*

¶ 67        To support his argument, defendant also cites this court's opinion in *Kitch*, 239 Ill. 2d at 463-64. In *Kitch*, the defendant was convicted following a jury trial of nine counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse. *Id.* at 455. The appellate court modified the defendant's sentence but affirmed the convictions. *Id.* Before this court, the defendant argued, *inter alia*, that the child victims did not testify in enough detail to have appeared for cross-examination within the meaning of the confrontation clause. *Id.* at 460.

¶ 68        In *Kitch*, pursuant to section 115-10 of the Code, the circuit court held that the out-of-court statements made by the victims to the sheriff and one of his employees were admissible at trial if the children testified. *Id.* at 456. The defendant argued before this court that the victims did not testify in enough detail to have appeared for cross-examination within the meaning of the confrontation clause because the State failed to establish through their testimony each and every element of every count against him. *Id.* at 460. As a result, the defendant argued that he was unable to effectively cross-examine them. *Id.* Considering the claim under the plain-error

doctrine, this court first determined that no error occurred. *Id.* at 462, 465. This court concluded that the victims' direct testimony was sufficient to establish the elements of the relevant counts against defendant. *Id.* at 464. This court stated that the victims' "direct testimony provided enough detail to allow for cross-examination within the meaning of the confrontation clause" and that "[t]here was no [indication] they were being evasive." *Id.* More specifically, this court stated:

> "Accordingly, K.J.K.'s and M.J.B.'s direct testimony, standing alone, was sufficient to establish the elements of the relevant counts against defendant. We also conclude, largely for this reason, that K.J.K.'s and M.J.B.'s direct testimony was sufficient to allow for effective cross-examination. Their direct testimony provided enough detail to allow for cross-examination within the meaning of the confrontation clause. Our review of the record shows that both K.J.K. and M.J.B. answered all of the questions put to them by defense counsel on cross-examination. Their answers were forthright. There was no indication they were being evasive." *Id.*

¶ 69 Any suggestion in *Kitch*, as detailed above, that a defendant's right to confrontation may be denied if a witness's direct testimony is not detailed enough, not sufficiently accusatory, or evasive is contrary to United States Supreme Court precedent and this court's precedent. See *Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985) (*per curiam*) ("The [c]onfrontation [c]lause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion."); see also *United States v. Owens*, 484 U.S. 554, 558 (1988); *Flores*, 128 Ill. 2d at 90; *People v. Sutton*, 233 Ill. 2d 89, 121 (2009). Neither section 115-10 nor the confrontation clause requires a child witness to testify to the details of the crime. See *Fensterer*, 474 U.S. at 22. The child witness's inability to recall the details of the crime or her prior interview affects her credibility, not the admissibility of her prior statements during the interview. *Id.*

¶ 70 In this case, K.P. appeared for direct and cross-examination and answered the questions posed to her at trial, including the substantive questions during direct examination regarding the crime and her prior interview, even though she asserted denials and her memory prevented her from recalling details of the prior interview or the assault. To the extent that her testimony was inconsistent with her prior

statements, defendant was free to highlight the inconsistency to the jury and note that her testimony was consistent with the defense's theory. We cannot conclude that defendant's confrontation rights were violated because the defense was unable to cross-examine K.P. to the extent he would have liked. See *id.* at 20 ("[c]onfrontation [c]lause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (emphasis in original)). Defendant's failure to question K.P. about her out-of-court allegations when he had the opportunity does not mean that K.P. did not appear at trial or was an unavailable witness. Defendant was given the opportunity to cross-examine K.P., during which defendant could have further inquired about the basis and extent of her memory loss.

¶ 71    "Although the scope of cross-examination is generally limited to the subject matter of direct examination and to matters affecting the witness' credibility, this limitation is construed liberally to permit inquiry into subjects tending to explain, discredit, or destroy the witness' direct testimony." *People v. Lewis*, 223 Ill. 2d 393, 404 (2006). Indeed, in this case, K.P.'s credibility risked undermining as a result of her denials, "I don't know" answers, and "I don't remember" answers, and K.P.'s testimony on cross-examination supported the defendant's theory that K.P.'s statements during the recorded interview were a result of Pierce's allegations and physical abuse.

¶ 72                              *Fensterer*, *Owens*, and *Flores*

¶ 73    Our analysis is bolstered by the fact that the Court's decision in *Crawford* did not call into question its previous decisions in *Fensterer*, 474 U.S. at 20-22 (the confrontation clause guarantees opportunity to cross-examine; a lapse of witness's memory does not deny that right), and *Owens*, 484 U.S. 554 (opportunity for effective cross-examination is not denied when a witness's past belief is introduced and he is unable to recollect the reason for that past belief). Both *Fensterer* and *Owens* support our conclusion that defendant was not denied his right to confrontation in this case.

¶ 74    In *Fensterer*, the Supreme Court, in a *per curiam* order, held that the confrontation clause does not bar expert opinion testimony when the expert is

- 24 -

unable to recall the basis for his opinion. *Fensterer*, 474 U.S. at 18. In reversing the lower court's holding that the absence of the expert's acknowledgement of the basis of his opinion rendered cross-examination meaningless, the Supreme Court found that the right to cross-examine is not denied by the State whenever the witness's lapse of memory impedes one method of discrediting him. *Id.* at 19. The Supreme Court stated that the assurances of reliability found in the right of cross-examination are fully satisfied in cases where the witness is unable to recall the basis for his opinion because the factfinder can observe the witness's demeanor under cross-examination, and the witness is testifying under oath and in the presence of the defendant. *Id.* at 20. The Supreme Court further stated as follows: "Generally speaking, the [c]onfrontation [c]lause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Id.*; see *Davis*, 415 U.S. at 315-16 (" 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*.' " (Emphasis in original.) (quoting 5 John H. Wigmore, Evidence § 1395, at 123 (3d ed. 1940))).

¶ 75        The Supreme Court in *Fensterer* stated:

> "The [c]onfrontation [c]lause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the [c]onfrontation [c]lause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Fensterer*, 474 U.S. at 21-22.

See *Owens*, 484 U.S. at 558.

¶ 76        Three years later, in *Owens*, 484 U.S. at 556, a correctional counselor was brutally beaten and his memory severely impaired, and yet, after a few days, he was able to describe while hospitalized the attack and name his attacker in a statement to law enforcement. At trial, however, he remembered identifying the respondent as his assailant but admitted that he could not remember seeing his assailant and could not remember whether any of his hospital visitors had suggested that respondent was the assailant. *Id.* Thus, the defendant argued on appeal that the witness could not be effectively cross-examined as to whether the prior, out-of-

court identification was a result of police suggestion. *Id.* at 555-56. The Supreme Court reaffirmed that the confrontation clause guarantees only an opportunity for effective cross-examination and that successful cross-examination is not the constitutional guarantee. *Id.* at 559-60. In *Owens*, the Supreme Court held "that neither the [c]onfrontation [c]lause nor Federal Rule of Evidence 802 [regarding the admission of hearsay] is violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." *Id.* at 564; see Fed. R. Evid. 801(d)(1)(C) (eff. Oct. 16, 1975) (prior identification statement not hearsay if declarant is "subject to cross-examination concerning the statement"). The Court held that, instead, when a declarant of a previous statement is present at trial and subject to unrestricted cross-examination, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens*, 484 U.S. at 560. Accordingly, the Court in *Owens* held that a witness is "subject to cross-examination" when he is placed on the stand, under oath, and responds willingly to questions. *Id.* at 561. The Court held that the right to cross-examination is not denied by the witness's assertion of memory loss, but instead, the witness's assertion of memory loss "is often the very result sought to be produced by cross-examination[ ] and can be effective in destroying the force of the prior statement." *Id.* at 561-62.

¶ 77   In *Flores*, 128 Ill. 2d at 90, this court, following the analysis of the United States Supreme Court in *Fensterer* and *Owens*, rejected the defendant's argument that a witness's professed memory loss at trial as to the content of a conversation he had with the defendant deprived defense counsel of an opportunity to cross-examine the witness concerning his prior grand jury testimony, which was admitted under section 115-10.1 of the Code (Ill. Rev. Stat. 1985, ch. 38, ¶ 115-10.1 (providing that the witness be subject to cross-examination concerning the statement)). At the grand jury proceedings, the witness had testified that the defendant had told him that the defendant had shot the victim. *Flores*, 128 Ill. 2d at 88. At trial, however, the witness testified that he did not recall having a conversation with the defendant regarding the victim's death and that, while he recalled testifying at the grand jury proceedings, he could not recall the content of his testimony. *Id.* In holding that the confrontation clause was not violated by admission of the grand jury testimony that the witness claimed he could not recall, this court wrote, in pertinent part:

"The confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. [*Fensterer*, 474 U.S. at 20; *Green*, 399 U.S. at 158.] Contrary to the defendant's assertions, a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. See, *e.g.*, [*Owens*, 484 U.S. 554] [citations]." *Id.* at 88-89.

See *Lewis*, 223 Ill. 2d at 404 (witness is subject to cross-examination when she is placed on the witness stand under oath and responds to questions).

¶ 78        Thus, in accordance with precedent, we decline to extend *Crawford*'s holding to require that the child witness replicate or remember her prior statements to meet the requirements of the confrontation clauses found in the federal and state constitutions. A witness is regarded as "subject to cross-examination" when she is placed on the stand, under oath, and willingly responds to questions. *Owens*, 484 U.S. at 561; *Lewis*, 223 Ill. 2d at 404. "To be sure, the [confrontation clause's] ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee." *Crawford*, 541 U.S. at 61. "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.*; *cf.* 3 William Blackstone, Commentaries *373 ("This open examination of witnesses *** is much more conducive to the clearing up of truth ***."); Matthew Hale, History and Analysis of the Common Law of England 258 (1713) (adversarial testing "beats and bolts out the Truth much better"). Thus, we agree with the appellate court that the confrontation clause does not require that a child witness testify only by accusation or acknowledgement to the substance of the witness's out-of-court statements for those statements to be admissible. 2024 IL App (1st) 211175-U, ¶ 40,

¶ 79        Our conclusion is consistent with the great majority of cases reviewing this issue. See, *e.g.*, *People v. Dabney*, 2017 IL App (3d) 140915, ¶ 20 (for purposes of admitting victim's videotaped statement into evidence, because child witness answered the questions asked of her by defense counsel, she was present for cross-examination even though witness did not testify in court to two of the charges against defendant); *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 52 (declarant need not testify to every element of the charged offense for the declarant's out-of-

court statement to be admissible under section 115-10 of the Code); *Bryant*, 391 Ill. App. 3d at 1083 (rejecting defendant's argument that his confrontation clause rights were violated where only evidence introduced to support charged offenses came from hearsay statements and holding that, because child victim was present for cross-examination and answered the questions asked of her, she appeared for cross-examination at trial within the meaning of *Crawford* and the confrontation clause, despite her unwillingness or inability to testify on direct examination about defendant's making her put her mouth on his private part).

¶ 80        K.P. appeared at trial, testified under oath, and responded to the questions posed to her on direct and cross-examination. She made an in-court identification of defendant and recalled discussing him at the victim-sensitive interview with Alstott. She identified the injuries depicted in the photos taken at the hospital prior to the interview and testified that she was suffering from those injuries during the interview. Although K.P. revealed initial reluctance to cooperate and the court admonished her to answer questions posed by the State, she ultimately answered the substantive questions presented to her on direct examination and showed no reluctance during cross-examination. Her testimony about Pierce's beating of her in the days leading up to her interview aligned with the defense's theory that K.P.'s prior statements implicating defendant were given under duress and therefore unreliable. K.P. was required to testify under oath, under penalty of perjury; she responded willingly to substantive questions; the jury was able to evaluate her demeanor to determine the truth of her testimony; and defendant was free to question her. See *Owens*, 484 U.S. at 561. Accordingly, we conclude that K.P. appeared for cross-examination even though she testified that she did not remember her prior statements or the sex offenses at issue. Because K.P. testified at trial and was subject to unrestricted cross-examination, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements" of the confrontation clause. See *id.* at 560. Therefore, we conclude that the circuit court properly admitted into evidence at trial K.P.'s prior statements in the video recorded, victim-sensitive interview.

¶ 81                        CONCLUSION

¶ 82        For the foregoing reasons, we affirm the judgments of the appellate court and the circuit court.

¶ 83        Judgments affirmed.

¶ 84        JUSTICE ROCHFORD took no part in the consideration or decision of this case.